UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHARON MCMILLAN,<br><br>Defendant. | CR. 10-50054-01-JLV<br><br>ORDER |

## INTRODUCTION

Defendant Sharon McMillan, appearing *pro se*, filed a motion for compassionate release.  (Docket 137).  Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Ms. McMillan's motion.  (Docket 140).  For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 23-02

Standing Order 23-02,[1] captioned "Revising the Procedure for Compassionate Release Motions Under the First Step Act," "revis[ed] the procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)."  (SO 32-02).  Under the order, the FPD is automatically "appointed to represent all defendants in

---

[1]See https://www.sdd.uscourts.gov/content/standing-order-23-02-revising-procedure-compassionate-release-motions-under-first-step-act ("SO 32-02").

criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act. If the FPD believes itself to have a conflict of interest or other inability to represent a person who qualifies under (a) and (b) above, the FPD shall notify the magistrate judge in the division where the case is pending so that the magistrate judge may consider the appointment of a CJA panel attorney." Id. at ¶ 1.

## FACTUAL BACKGROUND

On September 30, 2011, Sharon McMillan was sentenced to a term of imprisonment of 210 months and a term of 5 years supervised release for her conviction for second degree murder. (Docket 109). Ms. McMillan had a total offense level of 37 and a criminal history category of III. (PSR[2] at ¶ 68). The court adopted the parties' agreement to downward depart two offense levels, under 5K2.10 victim conduct, making the sentencing range under the guidelines 210 months to 262 months. (Docket 117 at pp. 12 & 14). The statutory maximum was imprisonment for any term of years up to life. (PSR at ¶ 67).

Ms. McMillan is currently an inmate at the United States Penitentiary in Dublin, California ("FCI Dublin"). See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate _results. Ms. McMillan has a scheduled release date of April 26, 2025. Id.

---

[2]The Presentence Report ("PSR") was not filed in this case, as was the practice at the time.

## MS. MCMILLAN'S CLASSIFICATION

On November 29, 2022, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 139). They jointly "agree that this case should be categorized as a Low Priority case." Id.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to

3

investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. Id. Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances. Id. There was a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D). These categories have not been updated since December 2018 when FSA became law.[3]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence

---

[3]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

4

pursuant to the First Step Act"). The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act. It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Ms. McMillan submitted a request for compassionate release to FCI Dublin's Warden on March 25, 2022; she seeks release to be a "home care helper" for her mother, due to her rehabilitation and due to her health. (Docket 140 at pp. 168-69). The Warden denied the request on April 20, 2022. Id. at p. 170. Ms. McMillan satisfied her exhaustion requirement.

## B. Defendant's Motion for Compassionate Release

Ms. McMillan requests compassionate release for her health conditions, the prison conditions and to serve as her nephew's caregiver. (Docket 137 at pp. 4-6).

      First, Ms. McMillan argues she has "ulcers, asthma, osteoarthritis, rheumatoid arthritis, obesity, allergies including mold, a 2 yr knee injury, heart murmur, confusion, earaches [sic.], constant headaches, body pain, sinusitis, fatigue, breathing problems, . . . long Covid symptoms but medical insists that [she has] never had Covid and [she is] told to buy over the counter remedies for [her] ailments." Id. at p. 5.  Ms. McMillan's medical records confirm she suffers from chronic pain, asthma, myopia, first-degree atrioventricular block, esophageal reflux, psychosocial and environmental problems, a Global Assessment of Function of 51-70 and unspecified abnormalities of heartbeat. (Docket 140 at pp. 138-39).  She has had prescriptions for her conditions, including Albuterol, Amitriptyline, Bisacodyl, Fluticasone, Lactulose, Naproxen, Omeprazole, sulfaSALAzine, DULoxetine, Meloxicam, Metoclopramide and predniSONE.  Id. at pp. 37-38, 91-93, 150-52.  Ms. McMillan's medical records show she received two doses and a booster of COVID-19 vaccinations between May and December 2021.  Id. at p. at 88.

      Ms. McMillan has a history of some conditions listed in the CDC's list of conditions that could cause a person to become seriously ill if she contracts COVID-19, including asthma, abnormalities of her heartbeat and first-degree atrioventricular block.  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (Mar. 30, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

6

It appears her heart condition (atrioventricular block) has not presented any issues since June 22, 2015, and her heart rate and rhythm were regular on June 24, 2022. (Docket 140 at pp. 115 & 138). Her asthma is well controlled with albuterol and predniSONE. Id. at pp. 8, 13-14, 59, 61-62, 69 & 114. She has access to care for her conditions, and as noted above, she receives a number of prescriptions to address her various conditions. Id. at pp. 4, 11-12, 24, 40, 63, 116, 136, 155.

Ms. McMillan has a variety of medical conditions; however, her conditions appear to be adequately managed while incarcerated. "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Tyon, CR. 18-50115, 2022 WL 2953030, at *16 (D.S.D. July 26, 2022) (citing United States v. Ayon-Nunez, No. 1:16-CR-00130, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020)). The court finds that Ms. McMillan's medical claims are neither an extraordinary nor compelling reason that justify compassionate release.

Next, Ms. McMillan argues "due to unsanitary conditions," including "black mold, asbestos, and bird feces," she is "in constant need of [her] inhaler and in constant fear of developing asbestosis, mesothelioma or lung cancer." (Docket 137 at p. 5). She also argues that "Dublin FCI is called 'the Rape Club' . . . so the environment is hostile with retaliation and paranoia from the staff, the constant stress level added to [her] history of being sexually abused and the anxiety levels with [her] PTSD are some of the reasons why [she] does not feel safe in this prison, even with the many hours of post-sentencing

rehabilitations, to [her] these are extraordinary, and compelling reasons." Id. at p. 6.

This motion is not the proper vehicle for Ms. McMillan to challenge the conditions of her confinement. See United States v. Bear, CR. 19-10034-01, 2021 WL 1925488, at *2 (D.S.D. May 13, 2021). Claims regarding conditions of confinement must typically be brought in a separate civil action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Id. Further, even if this was the correct avenue, Ms. McMillan has not approached the demanding threshold for a showing of extraordinary and compelling circumstances in regard to her prison conditions.

Finally, Ms. McMillan claims her "sister died Sept 20 leaving 22 yr old son with autism, schizophrenia, ADHD, diabetes and in need of a guardian. [Her] 80 yr old mother was given 6 wks to live 5 weeks ago . . . Brother also has lung cancer and dementia his daughter cannot pay for caregiver. The other nephew is overwhelmed with the responsibilities and needs help with them." (Docket 137 at p. 6). Ms. McMillan provided no evidence in support of these claims. She did submit a copy of an order terminating appointment of a temporary guardian/conservator stating,

> The Court has been petitioned regarding the dismissal of Cheryl Montgomery as a Temporary Guardian/Conservator for Dorothy J Bergen, an incapacitated person, and the Court finds as follows: Cheryl Montgomery is discharged as Temporary Guardian/Conservator of Dorothy J Bergen. The authority and responsibility of this Temporary Guardian/Conservator is terminated. The ward died December 1, 2022.

8

(Docket 143 at p. 5). This does not appear to be relevant as Cheryl is Ms. McMillan's sister and Dorothy is their mother. (PSR at ¶¶ 42-43).

Although not unsympathetic, the court does not find Ms. McMillan's family circumstance to be an extraordinary or compelling reason that justifies compassionate release.

### C. **3553(a) Factors**

The 3553(a) sentencing factors further show that compassionate release is not warranted. These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

In Ms. McMillan's case, the nature and circumstances of the offense—second degree murder—is extremely serious. 18 U.S.C. § 3553(a)(1). The sentencing court agreed with the parties' recommendation to downward depart due to the victim's conduct. (Docket 117 at p. 13).

After Ms. McMillan's downward departure, she had a total offense level of 35 and a criminal history category of III, making the guideline imprisonment

9

range 210 months to 262 months.  Id. at p. 14.  Ms. McMillan's sentence was 210 months imprisonment.

The court is required to consider the history and characteristics of the defendant.  18 U.S.C. § 3553(a)(1).  Ms. McMillan's criminal history consists of three driving under the influence charges and one failure to appear.  (PSR at ¶¶ 34-37).  While incarcerated awaiting trial, Ms. McMillan received eight disciplinary actions or warnings, mainly consisting of unauthorized communications.  (PSR at ¶ 6).  While in prison, Ms. McMillan received one disciplinary action for committing "mail abuse, disrupt monitoring."  (Docket 140 at p. 171).

After careful consideration, the court concludes Ms. McMillan's sentence of 210 months continues to be appropriate for the seriousness of the crime she committed.

### ORDER

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 137) is denied.

IT IS FURTHER ORDERED that defendant's motion for reconsideration (Docket 138) is denied.

Dated July 13, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE